IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GEORGE LAND, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | NO. 17-0758 |
| | : | |
| KOZAK et al, | : | |
| *Defendants.* | : | |

**MEMORANDUM**

## I. INTRODUCTION

This action involves civil rights claims brought by Plaintiff George Land against Plymouth Township and four Plymouth Township police officers. Plaintiff originally claimed that he was subjected to excessive force, assaulted, falsely arrested and imprisoned, and maliciously prosecuted in violation of the Fourth Amendment, 42 U.S.C. § 1983, and state law. However, after the filing of the Complaint and as a result of the altercation Plaintiff bases his claims upon, Plaintiff was convicted in the Court of Common Pleas of Montgomery County for assaulting a police officer, resisting arrest, and possessing methamphetamine and then sentenced to nine to twenty-three months imprisonment. At this stage and in light of his conviction, Plaintiff is no longer contesting the legality of his arrest, prosecution, or imprisonment; rather, he is contesting the way the arrest was carried out by Defendant Officers Shaun Kozak, David Zinni, Joseph Didonato,

1

and Mark Ransom (collectively, "Defendant Officers").[1] Defendants moved for summary judgment (ECF No. 24) seeking that Plaintiff's remaining claims be dismissed because, among other things, Defendants are protected by qualified immunity. For the following reasons, Defendants' Motion for Summary Judgment will be granted.

## II. BACKGROUND[2]

As Plaintiff concedes, the facts that lead up to Plaintiff being taken into custody are not in dispute here. ECF No. 27 at pp. 1-2. On the night of his arrest, Plaintiff was sitting in his vehicle parked in a driveway located at 19 Hilltop Road, Plymouth Township, Pennsylvania. ECF No. 24-1, Defs.' Statement of Undisputed Facts, at ¶ 6. As Plaintiff was attempting to find another home in the immediate area, he stopped in the driveway at 19 Hilltop Road so that he could contact the individual he intended to visit. *Id.* at ¶ 7. The owner of the property at 19 Hilltop Road, Elizabeth Miller, did not recognize Plaintiff's vehicle and called the Plymouth Township Police Department to report that an unknown vehicle was parked in her driveway, had been there for approximately half an hour, and that she was afraid. *Id.* at ¶ 12; ECF No. 24-4 (Miller's Trial Testimony) at 85:7-10, 88:10-12. As a result of that phone call, Defendant Officers Kozak, Zinni, DiDonato, and

---

[1] The parties previously stipulated to dismiss Plaintiff's claims against Plymouth Township. ECF No. 5.
[2] The following background is the undisputed material facts from the record.

2

Ransom responded to 19 Hilltop Road. ECF No. 24-1, Defs.' Statement of Undisputed Facts, at ¶ 9.

To Miller's relief, Officers Kozak and Zinni arrived within minutes of her phone call and approached Plaintiff's car. ECF No. 24-4 (Miller's Trial Testimony) at 88:13-17; ECF No. 24-4 (Kozak's Trial Testimony) at 97:2-15. While Officer Kozak identified Plaintiff and asked him basic questions about why he was parked in Miller's driveway and Officer Zinni spoke to Miller, Officers Ransom and DiDonato also arrived at the scene. ECF No. 24-4 (Kozak's Trial Testimony) at 98:22–99:8. Officer Kozak testified that Plaintiff was having trouble answering his questions about why he was parked in Miller's driveway, which led him to believe that Plaintiff was under the influence of some kind of drug, that he seemed confused and paranoid, and that he "kept motioning towards the center console of the vehicle, and fidgeting around with his pockets while [Officer Kozak] was talking to him," so Officer Kozak advised him to keep his hands where he could see them because he felt it was dangerous not to be able to see Plaintiff's hands. *Id.* at 100:5-21; 118:13-24. When Plaintiff failed to heed Officer Kozak's instructions, the Defendant Officers asked him to exit his vehicle, which he did, and they frisked him to quickly check for weapons. *Id.* at 100:18–101:2.

Officer Kozak shortly thereafter returned to his patrol vehicle in order to check Plaintiff's driver's license, to see if he had any outstanding warrants, and to check in with his sergeant. *Id.* at 101:10-19. Officers DiDonato and Ransom remained with Plaintiff. *Id.* From his patrol car, Officer Kozak then observed Plaintiff's "demeanor change[]." *Id.* at 102:2-9. Plaintiff began acting more aggressively toward the Officers, yelling and screaming, and swearing loudly. *Id*; ECF No. 24-5 (Ransom's Trial Testimony) at 58:7-25; ECF No. 24-5 (DiDonato's Trial Testimony) at 94:2-10. Officer Ransom advised Plaintiff several times to calm down and warned him that he would be placed under arrest if he did not calm down. ECF No. 24-4 (Kozak's Trial Testimony) at 102:10-19; ECF No. 24-5 (Ransom's Trial Testimony) 59:2-13.

When Plaintiff failed to heed Officer Ransom's warning, Officer Ransom advised Plaintiff that he was placing him under arrest for disorderly conduct. ECF No. 24-4 (Kozak's Trial Testimony) at 102:16-24; ECF No. 24-5 (Ransom's Trial Testimony) 59:2-13. Plaintiff refused to be handcuffed, kept backing away from the officers toward his still-running car, and a struggle ensued. ECF No. 24-5 (Ransom's Trial Testimony) 59:2-13; ECF No. 24-5 (DiDonato's Trial Testimony) at 95:6-12. By the time Officer Kozak exited his patrol car and reached Plaintiff's car, Officers Ransom and DiDonato and Plaintiff were "already on the ground." ECF No. 24-4 (Kozak's Trial Testimony) at 102:16-24.

Miller's testimony at trial corroborates the Officers' accounts. She testified that after Plaintiff exited his vehicle, she could hear Plaintiff yelling from inside her house and that despite the Defendant Officers' attempts to try to calm him down for approximately five minutes, Plaintiff remained agitated, was waving his arms, and was "out of control." ECF No. 24-4 (Miller's Trial Testimony) at 89:15–90:19; 91:17-18. She then testified that she observed the Defendant Officers and Plaintiff end up on the ground. *Id.* at 90:17-19. Miller unequivocally testified that prior to the Defendant Officers and Plaintiff ending up on the ground, she did not see any of the Defendant Officers hit Plaintiff with any objects. ECF No. 24-4 (Miller's Trial Testimony) at 90:23–91:2. Miller testified that she "figured they did what they had to do." ECF No. 24-4 (Miller's Trial Testimony) at 94:10-14.

Even once he was on the ground, Plaintiff continued to resist arrest by kicking and elbowing the Defendant Officers and refusing to put his hands behind his back so that he could be handcuffed. ECF No. 24-4 (Kozak's Trial Testimony) at 103:22–104:4. During the struggle, Plaintiff continuously attempted to crawl under his car to further evade arrest. *Id.* at 104:9-13; ECF No. 24-6 (Land's Trial Testimony) at 41:2-7. Officer Kozak warned Plaintiff that if he did not stop resisting he would be tased. ECF No. 24-4 (Kozak's Trial Testimony) at 104:9–107:3. At some point during this struggle, Plaintiff bit Officer Kozak on the thumb

5

and would not release his finger, so he struck Plaintiff twice with his fist and tased[3] Plaintiff first on the back and when Plaintiff's continued thrashing forced Defendant Kozak to lose contact, then on the lower leg in an attempt to free himself from Plaintiff's jaw. *Id*; ECF No. 24-5 (Ransom's Trial Testimony) at 60:4-11, 104:9–107:3; ECF No. 24-5 (DiDonato's Trial Testimony) at 97:12-22. Plaintiff eventually released Officer Kozak's finger from his mouth and finally put his hands behind his back to be handcuffed. ECF No. 24-4 (Kozak's Trial Testimony) at 104:9–107:3; ECF No. 24-5 (DiDonato's Trial Testimony) at 97:12-22.

The Defendant Officers then handcuffed Plaintiff and helped him to his feet all while Plaintiff was still screaming, swearing, and attempting to bang his head against the back of his car. ECF No. 24-4 (Kozak's Trial Testimony) at 104:9–107:3, 114:21-25; ECF No. 24-5 (Ransom's Trial Testimony) at 61:22–62:3; ECF No. 24-5 (DiDonato's Trial Testimony) at 97:23–98:9. Plaintiff contends that during this struggle Defendants repeatedly struck him in the head with large flashlights, but the record wholly refutes that allegation. All three officers testified at trial that no one struck Plaintiff with any object, including a flash light of any

---

[3] Officer Kozak testified that he chose to apply the taser directly to Plaintiff rather than to shoot taser probe darts because he was in very close proximity to Plaintiff and the other Defendant Officers and thus, if he had shot the taser rather than applying direct contact to Plaintiff, everyone involved in the struggle would have been tased. ECF No. 24-4 (Kozak's Trial Testimony) 104:9–107:3.

6

size. ECF No. 24-4 (Kozak's Trial Testimony) at 119:14-18; ECF No. 24-5 (DiDonato's Trial Testimony) at 99:13-19. Indeed, Miller verified as much. ECF No. 24-4 (Miller's Trial Testimony) at 90:23–91:2.

Plaintiff was then transported to the police station, where the sergeant directed the officers to put Plaintiff in a restraint chair because he was still threatening the officers and failing to follow directions. ECF No. 24-4 (Kozak's Trial Testimony) at 111:2-11. At the sergeant's request and in accordance with standard procedure because a taser had been used on Plaintiff, two medics came to the station to evaluate Plaintiff for injuries and to determine if he needed to be taken to the hospital for further treatment. *Id.* at 111:17–112:11. The medics determined that Plaintiff did not need any further medical treatment. *Id.*

After the medics left the station, Officer Ransom conducted a thorough search incident to arrest of Plaintiff because the officers were unable to conduct a sufficient search at the scene due to Plaintiff's uncooperativeness. ECF No. 24-5 (Ransom's Trial Testimony) at 61:22–62:3. Officer Ransom found a floss container filled with crystal methamphetamine in Plaintiff's pocket. *Id.* at 66:17–68:7.

When Plaintiff was bailed out of prison by his sister eleven days later, she drove Plaintiff to the hospital because she said he appeared to be very confused and disoriented. ECF No. 24-5 (Neurology Expert Anjana Vidyadharan Trial

Testimony) at 117:9-22. He was evaluated in the emergency room and the computerized tomography ("CT") scan was negative.[4] *Id.* Because his symptoms allegedly persisted, Plaintiff was taken to another emergency room where he had a second CT scan; that scan also came back negative. *Id.* at 117:23–118:3. During a subsequent evaluation, a neurologist determined that Plaintiff was likely suffering from post-concussion syndrome, which people are likely to experience after a closed head injury, but offered no testimony at trial as to the causation of that alleged injury. *Id.* at 124:16-24.

Plaintiff was convicted by a jury in the Court of Common Pleas of Montgomery County of simple assault, resisting arrest, and possession of a controlled substance. ECF No. 24-7 at 250:2-15.

When Defendants moved for summary judgment in this case, Plaintiff maintained claims at Count I pursuant to the Fourth Amendment and 42 U.S.C. § 1983 against each of the Defendant Officers for excessive force, false arrest, false imprisonment, and malicious prosecution. Plaintiff maintained claims at Count II pursuant to state law against each of the Defendant Officers for assault and battery,

---

[4] The CT showed no acute intracranial hemorrhage or depressed calvarial fracture. However, it did show an age indeterminate right zygomatic arch (cheek bone) fracture. ECF No. 24-5 (Neurology Expert Anjana Vidyadharan Trial Testimony) at 122:16-19. In other words, the only noted finding was that there was evidence Plaintiff had at some point in time fractured his cheek bone but that it was unclear when the fracture had occurred. *Id.*

false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Plaintiff concedes in his response to Defendants' Motion for Summary Judgment that as a result of his convictions, his claims for false arrest, imprisonment, and malicious prosecution must be dismissed. ECF No. 27 at pp. 5-6. Accordingly, Plaintiff's claims for false arrest and malicious prosecution will be dismissed. However, Plaintiff maintains he still has a viable claim for excessive force. *Id.* For the reasons discussed below, Defendant Officers' Motion for Summary Judgment will be granted and Plaintiff's remaining claims against Defendants will be dismissed.

### III. Legal Standard

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Civ. P. 56(c). As the Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote omitted)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an

9

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986)) (emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*; *see Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 909 (3d Cir. 1984) (instructing that "conflicts of credibility should not be resolved on a hearing on the motion for summary judgment unless the opponent's evidence is too incredible to be believed by reasonable minds.").

### IV. Discussion

Defendants contend, among other things, that Plaintiff's remaining claims should be dismissed because Defendants are entitled to qualified immunity as the record establishes that they did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. ECF No. 24 at pg. 20. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two

10

important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

"The general rule of qualified immunity is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 645 (1987) (citation omitted). "The burden of establishing qualified immunity falls to the official claiming it as a defense." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 816–17, 819, (1982) (describing qualified immunity as a defense and noting that "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained"). The issue of whether an official is entitled to qualified immunity should be determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation. *Mitchell v. Forsythe*, 472 U.S. 511 (1985).

The qualified immunity standard is one of "objective legal reasonableness." *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007) (citing *Harlow*, 457 U.S. at 816–17, 819, (1982)). "For the official to have 'fair warning,' *United*

*States v. Lanier*, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), that his or her actions violate a person's rights, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Burns*, 642 F.3d at 176–77 (quoting *Anderson*, 483 U.S. at 640 (1987)). "However, '[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.'" *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Qualified immunity is an immunity from suit and not a mere defense to liability.

In this case, Plaintiff asserts that Defendants are not protected by qualified immunity because they violated Plaintiff's rights under the Fourth Amendment and state law by using excessive force during his arrest. "The Supreme Court has stated that the 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" *Green v. New Jersey State Police*, 246 F. App'x 158, 161 (3d Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). This Court must evaluate the "reasonableness of 'a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' while recognizing 'that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and

rapidly evolving-about the amount of force that is necessary.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

"The Supreme Court has stated that courts should consider 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* The Third Circuit has "also provided other relevant factors, such as 'the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Id.* (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997)).

Here, none of the Defendant Officers violated a clearly established right and are thus protected from Plaintiff's remaining claims on the basis of qualified immunity. While Plaintiff contends that there are genuine issues of material fact that should be decided by a jury at trial, the record wholly contradicts Plaintiff's self-serving and unsupported averments as to what occurred during his arrest. Indeed, each Officer Defendants' trial testimony detailed a consistent account of how and why the arrest was effectuated in the manner it was and what's more, Miller's trial testimony verifies the accuracy of those accounts. In fact, at times, Plaintiff has even conceded that the Officer's testimony is accurate, such as when

13

he admitted at trial to holding Officer Kozak's finger in his teeth, ECF No. 24-6 (Land's Trial Testimony) at 35:6-10, and to attempting to crawl under his car to get away from the Officers, *id.* at 41:2-7. Additionally, Plaintiff offers no expert testimony to substantiate his claims that his alleged injuries were caused by Defendants' conduct other than various treating physicians' documentation of Plaintiff's allegations. Thus, the Court finds that despite Plaintiff's argument to the contrary, the factual record in this case is clear and accordingly, that the consideration of qualified immunity at this stage is appropriate, especially in light of the general purpose of the doctrine.

A significant number of the factors the Court should consider in determining whether Plaintiff's rights were violated by Defendants' use of force during his arrest weigh in favor of finding that Defendants are protected from Plaintiff's remaining claims by qualified immunity. First, as the jury previously found, Plaintiff was actively resisting arrest and attempting to evade arrest by crawling under his car. Second, Plaintiff posed an immediate threat to the safety of the officers because as Defendants testified, Plaintiff was unable to and at times refused to answer Defendants' investigatory questions about why he was parked in Miller's driveway, they were unable to conduct a thorough search of Plaintiff to determine if he was armed, he was agitated, he continued to attempt to put distance between himself and Defendants, he failed to heed their warnings or to follow their

instructions, and he ultimately managed to resist three officers' attempts to subdue and handcuff him for a fairly significant period of time. It was not until Officer Kozak used his taser that all three men were able to adequately control Plaintiff's movement in order to handcuff him and put him into a police car. Third, the severity of Plaintiff's known crime at the time the complained of use of force was exerted, assault and resisting arrest, is significant. Further, it is notable that because Plaintiff was being fairly uncooperative from the outset of the interaction, the Defendant Officers were still relatively unsure why Plaintiff was parked in Miller's driveway, what he was doing at the time she called the authorities, and whether he was in the process of committing other crimes not yet known to them.

Thus, considering the totality of the circumstances here, and "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, while recognizing that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving," Defendants were justified in using the amount of force they exerted in order to subdue Plaintiff, handcuff him, and take him into custody. In Miller's words, "they did what they had to do." Accordingly, Defendants did not violate any of the complained of rights for which Plaintiff seeks redress and they are therefore protected by qualified immunity.

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted. An appropriate Order follows.

DATED: 3-26-2019

BY THE COURT:

_____
CHAD F. KENNEY, J.